IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| TUDOR INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 5:10-CV-81(MTT) |
| | ) | |
| David R. BECHAM, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

This matter is before the Court on Plaintiff Tudor Insurance Company's Motion for Summary Judgment (Doc. 51) and the Defendants' Motion for Summary Judgment (Doc. 53).[1] For the following reasons, both motions are **DENIED**.

### I. PROCEDURAL AND FACTUAL BACKGROUND

This is a declaratory judgment action arising out of an automobile collision on June 30, 2009, involving Defendant Lonnie Razz Lavender, Jr. and Defendants Walbert Lee Lawton, Linda Lawton, and Heather Toomer. Plaintiff Tudor Insurance Company insures Defendant David Becham, d/b/a Duramax Recovery, LLC (hereafter "Duramax"). Tudor seeks a declaration that its policy does not cover claims arising from the collision. Defendant Auto-Owners Insurance Company, which insures Punie Junie, Inc. a/k/a Paradise Auto Sales (hereafter "Paradise") and is providing coverage to Duramax and Lavender pursuant to a reservation of rights, has filed a counterclaim and

---

[1] Defendant Heather Toomer has not filed responsive pleadings and there is no evidence she was served with process. Accordingly, "Defendants" shall refer to the other defendants, collectively.

crossclaim seeking a declaration that Tudor has coverage and that its policy is excess to Tudor's policy.  Although the Defendants' Joint Motion for Summary Judgment only addresses the issue of whether Tudor's policy covers the collision, the Defendants' initial brief argues that Auto-Owners is entitled to judgment as a matter of law on its claim that Tudor's policy is primary.  Tudor has responded to this argument in its brief.  In subsequent briefing, Auto-Owners filed a separate brief and again addressed this issue.  The other defendants' subsequent briefs did not address this issue and they perhaps have no stake in the determination of which policy is primary.  Although Auto-Owners did not raise this issue in its motion, the Court will address it because it has been briefed by both Tudor and Auto-Owners.

At the time of the collision, Lavender was employed by Duramax, which is in the business of repossessing motor vehicles.  The collision occurred while Lavender was delivering a repossessed vehicle to Paradise, a used-car dealer.

Tudor issued its policy to Duramax through its agent, the Walter P. Geoghan Agency.  The policy contains an exclusion for "autos," but the exclusion does not apply to any "repossessed auto" while used in the conduct of "garage operations."  (Doc. 51-3, at 50).  However, the policy contains a Scheduled Driver Limitation Endorsement that states:

> The coverage provided by this policy does not apply:
>
> 1. To any claim or "suit" caused by the operation of a "repossessed auto" by your "employee(s)"; or
> 2. To any "loss" to a "repossessed auto" while being operated by your "employee(s)";

unless the "employee(s)" are scheduled below:

(Doc. 51-3, at 55). When the policy was issued, Lavender was not employed by Duramax and thus was not listed as a scheduled driver. Surprisingly, the policy is silent with regard to adding scheduled drivers. Apparently, Tudor delegated to the Geoghan Agency the responsibility of adding drivers, but there is no evidence that Tudor provided the Geoghan Agency with any guidance with regard to how this was to be done.

When the Geoghan Agency sent the policy to Duramax, it also sent a Privacy Statement & Disclosure Statement, which states, in part:

> This policy contains a scheduled driver limitation endorsement. I hereby agree that all drivers will be disclosed and reported to the company prior to being granted driving privileges. Company program underwriting must approve drivers. Undisclosed drivers will not be insured.

(Doc. 51-2). The statement does not define "company" or "company program underwriting."

The Geoghan Agency had a form for adding drivers to the policy that asked for the driver's name, date of birth, driver's license number and issuing state, years of experience, and position with the business. However, the Geoghan Agency did not require Duramax to submit requests using the form. Rather, when David Becham sought to add a driver, he would call Robin Gertner, formerly Robin Ryan, of the Geoghan Agency, and provide her with the name of the driver. Ryan would then instruct Becham to send an email or facsimile to the agency with the driver's name, date of birth, and driver's license number. Prior to June 30, 2009, Becham was able to successfully add drivers to the policy by following this procedure.

Upon receipt of the information from Becham, the Geoghan Agency would request the driver's driving record. A driver would be added to the policy if he was at least 23 years old, had fewer than three violations in the prior three years, had no

driving under the influence violations, and had no reckless driving violations. According to John Geoghan of the Geoghan Agency, these are "guidelines." (Doc. 54, John Geoghan Dep. at 60). However, these "guidelines" are not in the policy and are not even in writing. While it is not clear that these "guidelines" came from Tudor, John Geoghan testified that if a driver was denied, the agency would contact Tudor when "the insured asked [the agency] to make an exception for that particular driver." (Doc. 54, John Geoghan Dep. at 59).

If the driver met these "guidelines," the Geoghan Agency would prepare an endorsement that would add the driver to the policy effective 12:01 a.m. on the day Duramax disclosed the driver to the Geoghan Agency. However, the Parties dispute what information had to be disclosed for the driver to be covered. The Defendants argue that a driver was covered when his name was first disclosed to the Geoghan Agency. Tudor argues that coverage commenced when Duramax provided the information needed to determine whether the driver met the "guidelines" for coverage.

On June 29, 2009, Duramax located a vehicle for its client Paradise. Deena Becham, David Becham's wife, and Lavender, then a new employee handling business development, rode in Deena's car to pick up the vehicle. Because of the potential risk, Lavender repossessed the vehicle even though he was not a scheduled driver. However, he only drove it to a nearby gas station. He and Deena then switched cars and Deena drove the vehicle to Duramax's office.

The following morning, June 30, Deena called the Geoghan Agency to add Lavender as a scheduled driver. This was the first time Deena had called to add a driver. Because Ryan was on vacation, Deena talked with a receptionist. Deena

informed the receptionist that she wanted to add Lavender to the policy. The receptionist informed Deena that she needed to send an email or facsimile with "[Lavender's] personal information for Robin so that she could run whatever she does to … put him on [the] insurance." (Doc. 57, Deena Becham Dep. at 51).

After the telephone conversation, Deena began to type Lavender's personal information, but was interrupted by a call from Paradise instructing Duramax to deliver the vehicle because the person from whom the vehicle had been repossessed was on the way to talk about getting his vehicle back. It seems Paradise wanted the vehicle in case the parties resolved their differences. According to Deena, she thought Lavender was "covered" and she instructed Lavender to deliver the vehicle to Paradise. (Doc. 57, Deena Becham Dep. at 23). However, the collision with the Lawtons occurred before Lavender made it to Paradise.

Later that day, Deena called the Geoghan Agency to report the collision, and she was instructed by the receptionist with whom she spoke earlier to provide a formal statement. Deena included Lavender's name, date of birth, and driver's license number with her statement, which she sent via facsimile on July 1.

The Geoghan Agency did not request Lavender's driving record or add Lavender to the policy. If it had checked Lavender's driving record, the Geoghan Agency would have found that Lavender was 34 years old, had fewer than three violations in the prior three years, had no driving under the influence violations, and had no reckless driving violations. Thus, Lavender met the unwritten "guidelines" for adding a scheduled driver.

If Tudor's policy does provide coverage, Auto-Owners argues that its policy is excess over Tudor's coverage. The policies contain similar "other insurance" sections

that state that the insurance is excess if the loss arises out of the maintenance or use of a covered aircraft, auto, or watercraft. However, Auto-Owners' policy contains an additional auto-specific clause that states:

> 4. This insurance shall be, with respect to any auto to which this insurance applies:
>
>    a. Primary insurance for any auto owned by you except when such auto is in the care, custody or control of a garage customer;
>
>    b. Excess insurance over any other collectible insurance for any auto you do not own; and
>
>    c. Excess insurance over any other collectible insurance available to a garage customer when an auto owned by you is in the care, custody or control of such garage customer.

(Doc. 53-4, at 39-40).[2] Garage customer is defined as "[a]ny person while using an auto owned, maintained or used in your garage business." *Id.* at 12. Auto-Owners argues that this additional clause "expressly shows its intent to be excess over Tudor's coverage under the specific facts of this loss." (Doc. 53-1, at 11).

## II. DISCUSSION

Summary judgment must be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material facts and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "A factual dispute is genuine only if 'a reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)). The burden rests with the moving party to prove that no genuine issue of material fact exists. *Info. Sys. & Networks Corp. v. City of*

---

[2] You or your refers to Paradise, the named insured.

*Atlanta*, 281 F.3d at 1224.  The district court must "view all evidence in the light most favorable to the nonmoving party, and resolve all reasonable doubts about the facts in its favor."  *Id.*

### A. Tudor's Duty to Provide Coverage

Tudor's Motion for Summary Judgment can be disposed of easily.  Having provided no guidance in its policy to its insured with regard to the procedure for adding additional drivers to the policy, it can hardly claim that Duramax failed to follow appropriate procedures.  Clearly Tudor, implicitly or expressly, delegated to the Geoghan Agency the authority to add drivers.  Just as clearly, the Geoghan Agency allowed coverage to be effective retroactive to the date Duramax first provided information about a new driver to the agency, assuming that the Geoghan Agency subsequently determined the new driver met the "guidelines" for coverage.  The question, and it is a factual question, is what information Duramax needed to provide to trigger coverage.  Having provided no guidance on this question in its policy, Tudor cannot now argue that it is undisputed that coverage would only be effective from the time when Duramax first provided the information necessary to request the driver's driving record.

The Defendants' Motion for Summary Judgment presents a slightly closer question.  The Geoghan Agency's Privacy Statement & Disclosure Statement states that new drivers must be "disclosed and reported to the company prior to being granted driving privileges."  Construing this language against Tudor, it perhaps would be reasonable to conclude that Deena sufficiently disclosed Lavender to the Geoghan Agency to trigger coverage.  Again, the relation back of coverage to 12:01 a.m. on June

30, 2009 would depend upon the Geoghan Agency subsequently determining that Lavender met these "guidelines" for coverage. The Defendants argue that it is undisputed that Lavender met those "guidelines" and therefore coverage for Lavender was in force at the time of the collision. However, even giving the Defendants the benefit of a favorable construction of the Geoghan Agency's statement, there still are issues of disputed fact with regard to precisely what Duramax and the Geoghan Agency understood to be necessary for coverage to commence.

### B. Priority of Coverage

In this action, the excess insurance clauses of the "other insurance" sections in the policies are nearly identical except that Auto-Owners' policy contains an additional auto-specific clause. Tudor's policy states that its insurance is excess if the loss arises out of the use of a covered auto. Auto-Owners' policy states that its insurance is excess over any collectible insurance for any auto Paradise does not own and over any collectible insurance available to a customer when an auto owned by Paradise is in a garage customer's care, custody, or control.

Here, coverage would be excess under both the Tudor and Auto-Owners policy. Tudor's insurance would be excess because the loss arose out of the use of a repossessed vehicle, which is covered under the policy. Auto Owners' insurance would be excess because Paradise did not own the vehicle or if Paradise did own the vehicle, it was in the care, custody, or control of Duramax, a garage customer as defined by the policy. Thus, under these facts, both policies would be excess insurance.

Tudor cites *State Farm Fire & Casualty Co. v. Holton*, 131 Ga. App. 247, 248, 205 S.E.2d 872, 874 (1974) for the proposition that if "both insurers attempt to limit their

liability to excess coverage if there is other insurance, then the clauses are irreconcilable, cancel each other out, and the liability is to be divided equally between them." Holton arose out of a motor boat collision. The insurers had "substantially identical" excess coverage clauses that applied to the use of watercrafts. The Georgia Court of Appeals held that both excess coverage clauses applied because the collision involved a watercraft. Accordingly, the court determined that the parties had to divide liability equally.

Auto-Owners argues that because its policy contains an additional auto-specific clause, the policies are not identical and thus are not irreconcilable and its other insurance clause trumps Tudor's. However, Auto-Owners does not cite any authority for this proposition. Indeed, in Holton, the policies were deemed irreconcilable even though they were not identical. Here, as in Holton, both insurers attempted to make their insurance excess through clauses that were not identical. Under these facts, both policies would be excess and thus cancel each other out pursuant to Holton.

Because the clauses would cancel each other out, there must be a determination of each insurer's contribution. Tudor and Auto-Owners have identical "method of sharing" clauses that state, "[i]f all the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first." (Doc. 51-3, at 21; Doc. 53-4, at 39).

Accordingly, if it is determined that Tudor has coverage for the collision, the "method of sharing" clause shall govern each insurer's contribution.

## III. CONCLUSION

For the foregoing reasons, Tudor's Motion for Summary Judgment is **DENIED** and the Defendants' Motion for Summary Judgment is **DENIED**.

SO ORDERED, this the 14th day of June, 2011.

<u>S/ Marc T. Treadwell</u>
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT